UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES MEECE, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | )   No. 1:15-cv-00144-JMS-MJD |
| | ) |
| RAY'S, LLC doing business as RAY'S | ) |
| TRASH SERVICE, | ) |
| | ) |
| *Defendant*. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Presently pending before the Court is a Motion for Summary Judgment filed by Defendant

Ray's, LLC, doing business as Ray's Trash Service ("Ray's"), on all of *pro se* Plaintiff James

Meece's claims in this employment case.  [Filing No. 80.]  Mr. Meece opposes Ray's motion.

[Filing No. 94; Filing No. 95.[1]]  For the reasons that follow, the Court grants Ray's Motion for

Summary Judgment on all of Mr. Meece's claims.  [Filing No. 80.]

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear,

---

[1] On April 21, 2016, the day after filing his response to Ray's summary judgment motion, Mr. Meece filed a Motion and Request for all Retaliation Charges to Stay in Place in These Legal Proceedings.  [Filing No. 95.]  The substance of that motion supplements Mr. Meece's response brief regarding the merits of his retaliation claim.  [Filing No. 95.]  Although Ray's contends that the Court should not consider arguments made therein because the filing was an untimely response to the summary judgment motion, [Filing No. 96 at 9], because it was filed the day after Mr. Meece's response brief and Ray's had a chance to address it on reply, [Filing No. 96 at 9], the Court will consider the contents of the motion to be a supplemental response to summary judgment.

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d

2

903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary

judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657

F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P.

56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to

the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the

existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension

Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### RELEVANT BACKGROUND

The following statement of facts was evaluated pursuant to the standards set forth above.

That is, the facts stated are not necessarily objectively true, but as the summary judgment standard

requires, the undisputed facts and the disputed evidence are presented in the light most favorable

to Mr. Meece as the non-moving party, drawing all reasonable inferences in his favor. *See Reeves

v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Mr. Meece fell in a manhole in 1988 or 1989 and was in a car accident in 2006. [Filing

No. 82-1 at 3-5.] Because of those incidents, Mr. Meece has pain related to his neck, both

shoulders, back, arms and, "from time to time," his knees and right foot. [Filing No. 82-1 at 3.]

At the age of 47, Mr. Meece was hired by Ray's in September 2007 as a roll-off driver.

[Filing No. 82-1 at 27.] Ray's roll-off drivers are responsible for transporting various sizes and

types of containers to and from customers, transfer stations, and landfills. [Filing No. 82-3 at 6-

8.] Ray's roll-off drivers must drive the truck, rearrange the loads, tarp a roll-box, care for the

truck, inspect the truck before and after the runs, complete paperwork, and be courteous to

customers. [Filing No. 82-3 at 6-7.] A driver's "box count" is a good measure of productivity,

3

especially when analyzed over time and taking the driver's mileage into account. [Filing No. 82-3 at 10-13.] That said, because there are "a lot of variables that enter into [the box count of] any driver," [Filing No. 82-2 at 12], no written policy existed with specific performance standards for roll-off drivers, [Filing No. 94-17 at 11-12].

Mr. Meece told Ray's employee Matt Milton the day he was interviewed that he was disabled. [Filing No. 82-1 at 7.] He showed Mr. Milton a disability hunting permit and copies of his doctor's records. [Filing No. 82-1 at 8.] Mr. Milton asked Mr. Meece if he would be able to perform the duties of the job, and Mr. Meece said yes, as far as he knew, but that he may need an accommodation from time to time. [Filing No. 82-1 at 7; Filing No. 82-1 at 33-34 (Mr. Meece's testimony that he answered "yes" to the question on the application regarding his ability to "perform all of the essential duties of the job").] Mr. Meece had previously been a roll-off driver, so he believed that he knew what the job entailed. [Filing No. 82-1 at 8.] Mr. Meece had other conversations with Mr. Milton about his disability. [Filing No. 82-1 at 9-10.] Mr. Milton told Mr. Meece that working with closed compactors was a required part of the job for roll-off drivers but that if Mr. Meece needed to be accommodated, "they would try to accommodate [him]." [Filing No. 82-1 at 10.] Mr. Meece also talked to Jack Tharp, a roll-off supervisor or dispatcher, about his disability but he does not remember the date of that conversation. [Filing No. 82-1 at 10-11.]

Jeremey Tennery was a supervisor in the Ray's roll-off division in 2013. [Filing No. 82-4 at 4-5.] He was not aware of any of Mr. Meece's medical conditions. [Filing No. 94-17 at 14-15.] Based on his experience, it takes more work for roll-off drivers to process closed compactors because there are a few more steps involved. [Filing No. 82-4 at 13.] Although Mr. Meece was initially assigned closed compactors as part of his roll-off driver duties, Mr. Tennery ultimately

decided to stop assigning them to Mr. Meece in favor of assigning him "other boxes that were quicker so [he] could get more customers serviced." [Filing No. 82-4 at 13.]

On September 30, 2013, Mr. Tennery issued two written warnings to Mr. Meece. [Filing No. 82-4 at 8.] He did not ask anyone for permission before issuing the written warnings. [Filing No. 94-17 at 25; Filing No. 94-16 at 58.] The first written warning was for Mr. Meece's "work performance." [Filing No. 82-4 at 18 (first written warning).] It indicated that Mr. Meece's "box count must improve" and that "it is taking [him] too long to complete the boxes assigned." [Filing No. 82-4 at 8; Filing No. 82-4 at 18.] Mr. Meece and Mr. Tennery had a discussion and Mr. Meece tried to justify what he had been doing with his time. [Filing No. 82-4 at 9-10.] Mr. Meece got upset and refused to sign the first written warning. [Filing No. 82-4 at 10.] The second written warning was for Mr. Meece's "[f]ailure to follow assigned tasks" and indicated that he was not taking his required lunch break each day. [Filing No. 82-4 at 19 (second written warning).] Mr. Meece also refused to sign the second written warning. [Filing No. 82-4 at 19.]

Donald Matthews is the President of Ray's. [Filing No. 82-3 at 4.] The parties dispute whether Mr. Matthews was aware of Mr. Meece's medical conditions. [Filing No. 82-1 at 11-12 (Mr. Meece's testimony about conversations); Filing No. 82-3 at 14-15 (Mr. Matthew's testimony that he was not aware of any of Mr. Meece's medical conditions).] On September 27, 2013, Mr. Matthews and Mr. Meece had a "very heated discussion." [Filing No. 82-1 at 12; Filing No. 82-3 at 16.] Mr. Matthews testified that he told Mr. Meece that his slow productivity was "bullshit" and that he knew he was "more than capable of doing the job" because he previously had seen better performance from him. [Filing No. 94-16 at 54.] Mr. Matthews testified that he told Mr. Meece that he "wanted to see his box count come up" because Mr. Meece had been working 12 hours a day and doing "maybe four to five boxes a day, maybe." [Filing No. 94-16 at 54-55.]

According to Mr. Meece, Mr. Matthews yelled at him about how he knew that Mr. Meece "could do more boxes than [he was doing]" and that Mr. Matthews called Mr. Meece "an old disabled motherfucker."[2]  [Filing No. 82-1 at 12-14.]  Mr. Matthews checked on Mr. Meece's box count about a week later and told him it was up.  [Filing No. 94-16 at 56-57; Filing No. 82-1 at 15.]

Arlie Coke was hired as a Ray's roll-off supervisor and dispatcher on November 7, 2013. [Filing No. 82-2 at 4.]  He had previously worked at Ray's from 1992 to 2007, although he did not work with Mr. Meece during that time.  [Filing No. 82-2 at 5.]  Mr. Coke's duties in November 2013 were to oversee the roll-off drivers and make sure they were getting their work done.  [Filing No. 82-2 at 5.]  Mr. Tennery told Mr. Coke that Mr. Meece had been written up.  [Filing No. 94-17 at 19-20.]  Mr. Coke was not aware of any of Mr. Meece's medical conditions. [Filing No. 82-2 at 6-7.]  Mr. Meece never asked for Mr. Coke's assistance with his job and never asked not to be assigned closed compactors.  [Filing No. 82-2 at 7.]

Mr. Coke recalls an incident in early November 2013 where he was at a demolition site and he observed one of the roll-off drivers sitting in a truck for more than 45 minutes without getting out.  [Filing No. 82-2 at 18.]  Mr. Coke talked to Mr. Matthews on the phone, and the driver was identified as Mr. Meece.  [Filing No. 82-2 at 19; Filing No. 94-16 at 59.]

On the morning of November 27, 2013, Mr. Meece arrived at work early and had an interaction with Mr. Matthews where Mr. Matthews again criticized his box count.  [Filing No. 82-1 at 18.]  Mr. Meece then told Mr. Matthews that he was "going to go ahead to the EEOC and

---

[2] Although Mr. Matthews denies that he said that remark, [Filing No. 82-3 at 17], consistent with the applicable standard of review, the Court will assume that he did for purposes of summary judgment.

6

file a complaint about the comment of calling [him] an old disabled motherfucker back in September."[3] [Filing No. 82-1 at 18.]

Mr. Coke was in frequent contact with Mr. Meece via radio the morning of November 27, 2013, to ask what Mr. Meece was working on. [Filing No. 82-2 at 14-15 (Mr. Coke's testimony); Filing No. 82-1 at 19 (Mr. Meece's testimony).] The last time Mr. Coke talked to Mr. Meece on the radio, Mr. Meece told Mr. Coke that he was a "grown man" and didn't need a "babysitter." [Filing No. 82-2 at 14-15; Filing No. 82-1 at 20.] Mr. Coke reviewed the written warnings in Mr. Meece's personnel file that morning. [Filing No. 82-2 at 10-11.] Mr. Coke fired Mr. Meece later that day. [Filing No. 82-2 at 27; Filing No. 82-1 at 21-22.] Mr. Meece's low productivity was the stated reason that Mr. Coke terminated him. [Filing No. 82-2 at 11-12; Filing No. 82-1 at 21.] Mr. Coke did not talk to Mr. Matthews or ask his permission to terminate Mr. Meece before he did so, and he was unaware that Mr. Meece had told Mr. Matthews that morning that he intended to file an EEOC charge related to Mr. Matthew's September 2013 comment. [Filing No. 82-2 at 9; Filing No. 82-2 at 13; Filing No. 94-16 at 60-61.] Mr. Meece was 52 years old when he was terminated. [Filing No. 82-1 at 27.]

Mr. Meece filed a Charge of Discrimination against Ray's with the Indiana Civil Rights Commission on December 2, 2013. [Filing No. 82-7 at 3-7.] His charge checked boxes for discrimination based on age, sex, and disability but not retaliation. [Filing No. 82-7 at 3.] He cited the following particulars of the alleged discrimination:

---

[3] Although Mr. Matthews denies that Mr. Meece ever told him that he was going to complain to the EEOC about discrimination, [Filing No. 94-16 at 77], consistent with the applicable standard of review, the Court will assume that he did for purposes of summary judgment.

> I was hired in Sept. 2007 as a Rolloff Driver.  Throughout my employment, I requested not to be continuously assigned to compactors which require more physical exertion and are more labor intensive than open top boxes due to my disability.  Respondent was aware of my medical condition but did not accommodate my requests.  I was also subject to derogatory language based on my age and sex when Donald Matthews, owner, called me an old disabled m-f.  I believe I am being discriminated against in being denied reasonable accommodation because of my disability and subject to a hostile environment and terminated because of my age, 53 (date of birth:        /61), sex male, and disability, all in violation of Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act of 1967, as amended and the Americans with Disabilities Act of 1990 as amended.

DEC 0 2 2013

[Filing No. 82-7 at 3.]

On February 2, 2015, Mr. Meece, who was represented by counsel at the time, filed a Complaint against Ray's, alleging claims for disability and age discrimination, disability and age retaliation, and failure to pay overtime wages.  [Filing No. 1.]  Mr. Meece's counsel was granted leave to withdraw on December 21, 2015, and Mr. Meece has represented himself *pro se* since that time.  [Filing No. 61.]

Mr. Meece's Statement of Claims asserts that he is pursuing claims for age discrimination, disability discrimination, failure to accommodate his disability, and retaliation.  [Filing No. 87 at 3.]  Ray's has moved for summary judgment on all of Mr. Meece's claims.[4]  [Filing No. 80.]  Mr. Meece opposes that motion, [Filing No. 94; Filing No. 95], and the pending issues are now ripe for the Court's review.

### III.
#### DISCUSSION

Ray's moves for summary judgment on all of Mr. Meece's claims, [Filing No. 80], and Mr. Meece opposes that motion in all respects, [Filing No. 94; Filing No. 95].  The Court will first address procedural issues before turning to the merits of Mr. Meece's claims.

---

[4] Although Ray's moved for summary judgment before Mr. Meece filed his Statement of Claims, the Court gave Ray's an opportunity to file an amended motion after Mr. Meece filed his Statement of Claims, [Filing No. 88], and Ray's chose not to do so, [Filing No. 91].

### A. Mr. Meece's Failure to Comply with Procedural Rules

Before addressing the merits of Mr. Meece's claims, the Court must address Ray's argument that Mr. Meece's response brief should be stricken because he failed to comply with Local Rule 56-1 by not including a section labeled "Statement of Material Facts in Dispute" in his response brief. [Filing No. 96 at 3-4.] The Court will consider this argument and additional procedural missteps that Mr. Meece has made in this litigation.

The Court is cognizant of the unique challenges facing *pro se* litigants and is generally disposed toward providing such litigants the benefit of the doubt. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir. 2001). To that end, it is well-established that courts are required to give liberal construction to *pro se* pleadings. *Kaba v. Stepp,* 458 F.3d 678, 687 (7th Cir. 2006). But it is also well established that *pro se* litigants are not excused from complying with procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States,* 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel")).

As Ray's points out, Local Rule 56-1 requires a party responding to summary judgment to "include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." Mr. Meece did not do this, [Filing No. 94], and Ray's requests that the Court strike his response brief as a consequence, [Filing No. 96 at 3-4.] The Seventh Circuit has "repeatedly upheld the strict enforcement of [summary judgment] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."

*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).  Thus, the Court could consider Mr. Meece's failure to comply with Local Rule 56-1 to be dispositive.  It will not do so under these circumstances, however, because Mr. Meece's response brief makes it clear that he disputes Mr. Matthews' denial that he called Mr. Meece an "old disabled mother fucker," which Mr. Meece considers to be the crux of his age and disability discrimination claims.  [Filing No. 94 at 3.] Because Mr. Meece is *pro se* and his response brief makes clear that he disputes a key fact in this litigation, the Court denies Ray's request that his entire response brief be stricken.  [Filing No. 96 at 3-4.]

The Court does agree with Ray's, however, that Mr. Meece's failure to cite to evidence in his response brief and his general requests for the Court to review the evidence itself are troubling. [Filing No. 96 at 5-6.]  Many of the assertions in Mr. Meece's response brief either fail to contain citations to evidence or constitute legal conclusions.  [*See, e.g.*, Filing No. 94 at 4 (concluding with no elaboration or citation that Mr. Meece requested a reasonable accommodation under the ADA).] Mr. Meece's response brief also improperly asks the Court to sort through evidence he provided, [Filing No. 94 at 7 (asking the Court to review other driver's log sheets)], which the Court will not do, *see Johnson*, 325 F.3d at 898 (noting that the Seventh Circuit has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them").  To the extent that Mr. Meece withheld submitting or elaborating upon evidence with hopes that he could do so at trial, that was a mistake.  [Filing No. 94 at 6 (generally referencing evidence and witness testimony and stating that "at trial it will prove all my claims as a result of defendant[']s unlawful actions").]  It is well-established that "[s]ummary judgment is the put up or shut up moment in a lawsuit, when a party

must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901.

Finally, and perhaps most significantly, the undisputed evidence in the record shows that Mr. Meece failed to respond to Ray's Requests for Admission during discovery.  [Filing No. 82-6.]  Federal Rule of Civil Procedure 36(a)(3) provides that if a party is served with requests for admission, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."   Counsel for Ray's attests that Requests for Admission were served on Mr. Meece on January 12, 2016.  [Filing No. 82-6 at 2-3.]  She attests that as of the date of Ray's summary judgment filing—more than fifty days after he was served— Mr. Meece had not responded to the Requests for Admission.  [Filing No. 82-6 at 2-3.]  Mr. Meece does not dispute this contention in his response brief.  [Filing No. 94.]  Thus, pursuant to Rule 36(a)(3), Mr. Meece has admitted Ray's requests.  The fact that he is *pro se* does not excuse his failure to respond or spare him from the effect of Rule 36(a)(3).[5]  *See In re Greene*, 310 F. App'x 17, 20 (7th Cir. 2009) (affirming district court decision to deem requests for admission admitted when *pro se* party did not respond by deadline); *see also Capitol Records, Inc. v. Koyate*, 2008 WL 2857237, at *5 (N.D. Ind. 2008).

As a result of his failure to respond to Ray's Requests for Admission, Mr. Meece has admitted many key facts in this litigation. Fed. R. Civ. Pro. 36(a)(3).  For example, he has admitted that he failed to meet Ray's legitimate expectations during his employment, that he was terminated as a result of his failure to meet those legitimate expectations, and that Ray's did not terminate him

---

[5] Mr. Meece was not always *pro se*.  Counsel initiated this action on his behalf before being granted leave to withdraw due to an irreconcilable breakdown of the attorney-client relationship.  [Filing No. 54; Filing No. 61.]

because of his age, disability, or as retaliation for engaging in protected activity. [Filing No. 82-6 at 7-8.] These admissions are dispositive of Mr. Meece's claims under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and his retaliation claim because they negate essential elements of each claim, as the Court sets forth below. Accordingly, the Court concludes that Ray's is entitled to summary judgment on all of Mr. Meece's claims as a matter of law.

### B.  ADA Claims

Although the Court has already concluded that Ray's is entitled to summary judgment on Mr. Meece's claims as a matter of law because of Mr. Meece's admissions, it will address the merits of the arguments presented by the parties on summary judgment out of an abundance of caution to ensure that Mr. Meece has received the benefit of the doubt as a *pro se* party.

Mr. Meece makes two claims pursuant to the ADA—a disability discrimination claim and a failure to accommodate claim. [Filing No. 87 at 3.] He alleges that he is disabled for purposes of the ADA because of pain related to his neck, shoulders, back, arms, knees, and right foot, stemming from injuries pre-dating his employment with Rays. [Filing No. 82-1 at 3-5.]

Ray's moves for summary judgment on both of these claims, contending that Mr. Meece does not have a disability for purposes of the ADA, that Ray's was not aware of the purported disability, and that the accommodation he requests—not to transport compactors—is not reasonable because it was an essential part of his job. [Filing No. 81 at 19-23.]

In response to Ray's argument that he does not have a disability pursuant to the ADA of which Ray's was aware, Mr. Meece contends that he provided copies of his medical records reflecting his disabilities when he was hired in 2007 and that he advised Mr. Milton that he would on occasion need a reasonable accommodation "in the form of not being assigned to compactors

12

when his disabilities became worse."  [Filing No. 94 at 2.]  Mr. Meece further contends that he

"renewed his request multiple times to defendant[']s management employees" and that "[o]n

occasion defendant provided the requested accommodation to Meece" but that it did not do so "a

significant majority of the time."  [Filing No. 94 at 2-3.]

The ADA prohibits employers from discriminating against disabled employees because of

their disability.  42 U.S.C. § 12112(a).  The ADA also provides that an employer must provide

"reasonable accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  For both a disability discrimination

claim and a failure to accommodate claim, a plaintiff must show, among other things, that he is

disabled as defined by the ADA.  *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir.

2005) (failure to accommodate claim); *Dickerson v. Bd. of Trustees of Cmty.*, 657 F.3d 595, 601

(7th Cir. 2011) (disability discrimination claim).

The ADA defines a "qualified individual with a disability" as "an individual with a

disability who, with or without reasonable accommodation, can perform the essential functions of

the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  It defines

the term "disability" as:  "(A) a physical or mental impairment that substantially limits one or more

major life activities of the individual; (B) a record of such an impairment; or (C) being regarded

as having such an impairment."  42 U.S.C. § 12102(1).  The type of "major life activities" that

must be substantially limited "include, but are not limited to, caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2).

If "working" is the only major life activity in which a plaintiff claims to be impaired, then

he has to show that the disability "significantly restricted [his] ability to perform either a class of

jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Carothers v. Cty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015) (citing *Povey v. City of Jeffersonville*, 697 F.3d 619, 623 (7th Cir. 2012)). "Demonstrating a substantial limitation in performing the *unique aspects of a single specific job* is not sufficient to establish that a person is substantially limited in the major life activity of working." *Carothers*, 808 F.3d at 1147 (emphasis in original) (citing 29 C.F.R. § 1630 Appendix). A plaintiff's failure to submit or cite evidence on summary judgment that his alleged disability substantially limits one or more major life activities entitles the employer to summary judgment as a matter of law. *See Povey*, 697 F.3d at 624 (granting summary judgment in favor of employer after concluding employee "failed to meet her burden to demonstrate that she was disabled under the ADA"); *Makeda-Phillips v. Illinois Sec'y of State*, 2016 WL 2731490, at *2 (7th Cir. 2016).

As evidentiary support for his alleged disability, Mr. Meece references his "hunting disability card" that he showed multiple Ray's employees and generally references medical records that he showed Mr. Milton when he was hired in 2007. [Filing No. 94.] Mr. Meece does not argue that hunting is a major life activity for purposes of the ADA, and the text of the statute would not support such an assertion. 42 U.S.C. § 12102(2). Mr. Meece also does not cite, detail, or make arguments regarding his alleged disability for purposes of the ADA with regard to the medical records he showed Mr. Milton when he was hired in 2007.[6]  Even if he did, it is unclear how medical records from 2007 support Mr. Meece's alleged disability when he was terminated in 2013, given that those medical records precede his termination by six years.

---

[6] To the extent that Mr. Meece submitted medical records in response to summary judgment, [*see, e.g.*, Filing No. 94-4], he does not cite, analyze, or explain how they support his claims, [Filing No. 94]. Even for *pro se* plaintiffs, the Court will not scour the record looking for factual disputes to create an issue to defeat summary judgment. *Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

14

To the extent that Mr. Meece's arguments suggest that his medical condition substantially impairs him from the major life activity of working, his arguments are limited to the unique aspects of the specific roll-off driver job he had at Ray's.  This is insufficient evidence to support any substantial limitation in the major life activity of working.  *See Carothers*, 808 F.3d at 1147-48 (holding that plaintiff's evidence of anxiety disorder that prevented her from interacting with juvenile detainees at facility "is a *unique aspect of the single specific job* of working as a hearing officer at a juvenile correctional center.  There is no evidence that [her] anxiety disorder would prevent her from engaging in any other line of occupation.") (original emphasis); *see also Squibb v. Memorial Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) ("A demonstrated inability to perform a single, particular job does not render an individual substantially limited in the major life activity of working.").  Moreover, the fact that Ray's may have viewed him as unable to timely perform certain roll-off driver duties related to the closed compactors is also insufficient to render him disabled pursuant to the ADA.  *Povey*, 697 F.3d at 624 ("The fact that [the employer] viewed [plaintiff] as unable to perform the tasks required at the [job site] tells us nothing about [the employer's] perception of [plaintiff's] abilities to perform a broad range of jobs.").

For these reasons, even viewing the facts in the light most favorable to Mr. Meece as the non-movant, and setting aside his dispositive admissions, the Court concludes that he has not provided evidence from which a jury could reasonably conclude that he was disabled or regarded as disabled for purposes of the ADA.  Having failed to meet this burden, Mr. Meece's ADA claims fail as a matter of law and Ray's is entitled to summary judgment on them.  *Povey*, 697 F.3d at 624 ("Having failed to meet her burden to demonstrate that she was disabled under the ADA, [plaintiff] is not protected by its provisions.").

15

### C.  Age Discrimination Claim

Ray's moves for summary judgment on Mr. Meece's age discrimination claim, arguing that it fails under either the direct or indirect methods of proof.  [Filing No. 81 at 11-15.]  The only evidence Mr. Meece cites in his response brief as support for this claim is Mr. Matthews' alleged comment two months before Mr. Meece was terminated that he was "an old disabled motherfucker."  [Filing No. 94 at 3.]  Mr. Meece does not cite case law in his response brief or clarify whether he is proceeding under the direct or indirect method of proof for either claim.  [Filing No. 94.]

The ADEA prohibits taking adverse employment actions against workers 40 or older based on age. 29 U.S.C. § 623(a)(1); *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014).  A plaintiff may prove claims of age discrimination under either the direct or indirect method of proof. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014).

The direct method requires "evidence of animus—the so-called 'smoking gun.'"  *Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010).  It "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus."  *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (citations and quotation marks omitted).  Therefore, "[d]erogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory."  *Id.*  "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'"  *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).  "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'"  *Cerutti*, 349 F.3d at

16

1061 (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).   "[S]tray remarks in the workplace" such as these "are insufficient to establish that a particular decision was motivated by discriminatory animus," especially when they are not "in reference to the adverse employment action." *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 491 (7th Cir. 2007) (citation omitted).

To indirectly prove illegal discrimination, a plaintiff may rely on the *McDonnell Douglas* burden-shifting method of proof.  *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).   Under this framework, the plaintiff must first set forth a *prima facie* case of discrimination, which requires a showing that: (1) he was a member of the protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably.   *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002).    If the plaintiff successfully makes this showing, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action.  *Id.* at 772.   Should the defendant meet this requirement, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.   *Id.*   To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is unworthy of credence.   *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675-76 (7th Cir. 2003).   An employer's changed reasoning or failure to proffer an explanation when given an opportunity to do so can be evidence of pretext.   *Id.*

In support of his age discrimination claim, Mr. Meece exclusively relies on Mr. Matthews' alleged remark in September 2013 that Mr. Meece was "an old disabled motherfucker."   [Filing No. 94 at 3; *see also* Filing No. 82-1 at 12-14 (Mr. Meece's deposition testimony).]   Although Mr.

Matthews denies that he made this comment, [Filing No. 82-3 at 17 (Mr. Matthews' deposition)], the Court will assume that he did for purposes of summary judgment because it must make all reasonable inferences in favor of Mr. Meece—the non-movant—and Mr. Matthews' testimony confirms that his September 2013 exchange with Mr. Meece got "very heated." [Filing No. 82-3 at 16.]

Even assuming that Mr. Matthews called Mr. Meece "an old disabled motherfucker" two months before Mr. Meece was terminated, that isolated remark is insufficient evidence as a matter of law to sustain Mr. Meece's age discrimination claims. A particular remark only provides direct evidence to support an inference of discrimination if it was made by the decision-maker, around the time of the decision, and in reference to the adverse employment action. *Hemsworth*, 476 F.3d at 491. Mr. Matthews' comment was made two months before Mr. Meece was terminated, was not made by Mr. Coke (the undisputed decision-maker), and Mr. Matthews didn't reference termination when making the comment. Thus, the stray comment, while offensive, is not direct evidence to support an inference of age discrimination in these circumstances as a matter of law.

As for the indirect method of proof, Mr. Meece does not name or cite evidence that a similarly-situated comparator outside of his protected class was treated more favorably.[7] [Filing No. 94.] "[T]he indirect method requires the identification of similarly situated comparators

---

[7] Mr. Meece's response brief indicates that he "provided other drivers log sheets for the court to review that will show that other drivers done the same amount or less than I did and was not terminated if the court could review all the rolloff drivers log sheets from 2007 to 2013 the court would definitely find and overly amount of the drivers did not get 8-12 boxes and day and was not terminated." [Filing No. 94 at 7.] Mr. Meece does not cite where in the record those log sheets are located. It is Mr. Meece's burden to point the Court to "definite, competent evidence in rebuttal" to defeat summary judgment. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Moreover, the daily log sheets the Court did locate do not reference a driver's age. [*See, e.g.*, Filing No. 94-9 at 3.] Thus, standing alone, they are not evidence that any of Mr. Meece's younger co-workers were treated more favorably than Mr. Meece.

because all things being equal, if an employer takes an action against one employee in a protected class but not against another outside that class, one can infer discrimination.  The similarly situated prong establishes whether all things are in fact equal." *Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014).  By not identifying a similarly-situated employee outside of his protected class that was treated more favorably, Mr. Meece's age discrimination claim fail as a matter of law under the indirect method of proof.  *Id.*; *see also Hutt v. AbbVie Products LLC*, 757 F.3d 687, 693 (7th Cir. 2014).

For these reasons, even viewing the facts in the light most favorable to Mr. Meece as the non-movant, and setting aside the dispositive admissions, Ray's is entitled to summary judgment on Mr. Meece's age discrimination claim.[8]

### D.  Retaliation Claim

Ray's argues that Mr. Meece's retaliation claim fails as a matter of law because he did not exhaust his administrative remedies to bring such a claim.  [Filing No. 81 at 24-26.]  Ray's points out that Mr. Meece did not allege retaliation in his EEOC charge and that there is no mention of any protected activity or retaliation in his EEOC Questionnaire.  [Filing No. 81 at 24-25.]  Ray's argues that even if Mr. Meece did exhaust his administrative remedies, his retaliation claim fails under either the direct or indirect methods of proof.  [Filing No. 81 at 26-32.]

---

[8]  The Court notes that Mr. Meece relied on the same evidence to support his disability discrimination claim—namely, Mr. Matthews' comment that he was "an old disabled motherfucker."  The same standards set forth above regarding the direct or indirect methods of proof for age discrimination claims also apply to disability discrimination claims.  *Dickerson*, 657 F.3d at 601.  Thus, even if Mr. Meece were disabled or regarded as disabled for purposes of the ADA, his disability discrimination claim still fails as a matter of law for the same reasons that his age discrimination claim fails.  In sum, Mr. Matthew's stray comment, while offensive, is not direct evidence to support an inference of disability discrimination in these circumstances, and Mr. Meece has not identified a similarly-situated employee outside of his protected class that was treated more favorably.

In response, Mr. Meece asks the Court to consider his retaliation claim administratively exhausted. [Filing No. 95.]  He claims that he asked the EEOC to add retaliation charges during the investigation. [Filing No. 95 at 2-3.]  He also blames the EEOC for not realizing that retaliation charges were appropriate given the alleged circumstances of his termination.  [Filing No. 95 at 4.] As evidence of the alleged retaliation, Mr. Meece cites his conversation with Mr. Matthews the morning of his termination, where he alleges he informed Mr. Matthews he was going to file EEOC charges based on Mr. Matthew's comment that he was "an old disabled motherfucker" two months earlier.  [Filing No. 94 at 6.]

In reply, Ray's emphasizes that even if the Court concludes that Mr. Meece administratively exhausted his retaliation claim, Mr. Coke—the undisputed decision-maker— knew nothing about Mr. Meece's comment to Mr. Matthews about filing EEOC charges.  [Filing No. 96 at 8.]

### 1) Administrative Exhaustion Requirement

Generally, a plaintiff may not bring claims that were not originally brought among the charges to the EEOC.  *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002).  A plaintiff may, however, bring claims "that are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'"  *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)).  Normally, however, "retaliation and discrimination charges are not considered 'like or reasonably related' to one another."  *Swearnigen-El*, 602 F.3d at 864-65.

It is undisputed that Mr. Meece did not check the retaliation claim box on his EEOC Charge of Discrimination form.  [Filing No. 82-7 at 3 (box for "retaliation" left unchecked).]  Moreover, the allegations in Mr. Meece's Charge of Discrimination form and Intake Questionnaire make clear

that his claims stemmed from Ray's allegedly discriminatory termination of his employment due to his age and disability, not from alleged retaliation due to Mr. Meece's comment to Mr. Matthew's about his intention to file EEOC charges.  [Filing No. 82-7.]  In short, because Mr. Meece's EEOC charge did not mention "retaliation or any other words to that effect," it cannot "fairly be said that the charge alleges retaliation."  *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1988) (affirming the district court's grant of summary judgment to the defendant on the plaintiff's unexhausted retaliation claim); *see also Swearnigen-El*, 602 F.3d at 864.  Thus, Ray's is entitled to summary judgment for Mr. Meece's failure to administratively exhaust his retaliation claim.

### 2) Merits of Retaliation Claim

Even if the Court considers the merits of Mr. Meece's retaliation claim, it still fails on summary judgment as a matter of law.

A plaintiff may establish retaliation under either the direct or indirect method of proof. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).  To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial, showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two. *Id.*  "It is well established that mere temporal proximity between the statutorily protected activity and the action alleged to have been taken in retaliation for that activity will rarely be sufficient in and of itself to create a triable issue."  *Id.* at 308; *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone ... does not support a reasonable inference of retaliation....").

Under the indirect method of proof, a plaintiff may establish a *prima facie* case of retaliation by showing that: (1) he engaged in a statutorily protected activity; (2) he met his

employer's legitimate expectations; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity. *Harper*, 687 F.3d at 309. Once a plaintiff makes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. *Id.* If the employer satisfies its burden, the burden shifts back to the plaintiff to prove that the proffered reason was pretextual. *Id.*

Mr. Meece cites no evidence that Mr. Coke—the undisputed decision-maker for his termination—was aware that Mr. Meece told Mr. Matthews the morning of his termination that he intended to file an EEOC charge about Mr. Matthews' comment from September 2013. Mr. Meece must cite evidence that Mr. Coke knew that Mr. Meece had engaged in the statutorily protected activity or otherwise the adverse employment action could not be the result of the protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668-69 (7th Cir. 2006) (holding that proving retaliation "presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them."). He has identified no such evidence.

Moreover, it is beyond dispute that Mr. Meece has not identified any similarly situated Ray's employees who were treated more favorably than he was but did not engage in statutorily protected activity. His failure to do so on summary judgment dooms his retaliation claim. *Harper*, 687 F.3d at 310 (concluding that employer was entitled to summary judgment because plaintiff failed to identify any individuals who were similarly situated for purposes of establishing a retaliation claim).

For all of these reasons, even if the Court ignores the fact that Mr. Meece failed to administratively exhaust his retaliation claim and sets aside his dispositive admissions, Ray's is entitled to summary judgment on that claim.

## IV.
### CONCLUSION

The Court construes Mr. Meece's Motion for all Retaliation Charges to Stay in Place in these Legal Proceedings as a supplemental response brief opposing summary judgment, and the Clerk is directed to **TERMINATE** that filing as an independent motion.  [Filing No. 95.]  For the reasons explained herein, the Court **GRANTS** Ray's Motion for Summary Judgment on all of Mr. Meece's claims.  [Filing No. 80.]  Ray's Motion for Continuance of Settlement Conference, [Filing No. 100], and Motion for Continuance of Jury Trial and Related Deadlines, [Filing No. 101], are **DENIED AS MOOT**.  Final judgment shall issue accordingly.

Date:  June 21, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via U.S. Mail:**

JAMES MEECE
4400 Branstetter Road
Nashville, IN 47448

**Electronic Distribution via CM/ECF:**

Steven F. Pockrass
OGLETREE, DEAKINS, NASH, SMOAK & STEWART PC (Indianapolis)
steven.pockrass@ogletreedeakins.com

Theresa Renee Parish
OGLETREE, DEAKINS, NASH, SMOAK & STEWART PC (Indianapolis)
theresa.parish@odnss.com